I concur in the majority's analysis and disposition of appellant's first assignment of error.
As to the majority's analysis and disposition of appellant's third and fourth assignments of error,[1] I agree the trial court properly overruled appellant's Civ. R. 60(B)(1) motion.[2] The majority fails to address appellant's arguments as to the applicability of Civ. R. 60(B)(2), (4) and (5) despite both parties' devoting a considerable amount of attention thereto in their respective briefs to this Court.[3] I would also overrule appellant's claims under subsections (2) and (4) of Civ. R. 60(B). However, I would reverse the trial court's summary dismissal of appellant's motion under Civ. R. 60(B)(5) and remand that issue to the trial court for further proceedings wherein evidence as to the value of appellant's security in the Augers and the priority of his liens thereon, and as to whether any financial misconduct occurred in appellant's dealings with Milligan can be determined.[4] If ultimately determined to be insufficient to cover the value assessed to the Milligan receivable by the trial court, then relief may be appropriate. Accordingly, I would sustain appellant's fourth assignment of error.
I disagree with the majority's decision the trial court erred in its valuation of the Milligan receivable. Concededly, any valuation of the Milligan receivable was speculative. The value of any account receivable is speculative by its very nature. Accurate valuation of accounts receivable may take years to be finally determined. The trial court cannot be faulted for placing the value on the Milligan receivable based upon the evidence presented to it by the parties although it was inherently speculative at the time of trial. To require otherwise would mean this and all other divorce cases involving marital property with accounts receivable would remain pending indefinitely awaiting final accounting whenever an equalizing cash distributive award is to be ordered.
Although the trial court may have been on notice of potential problems with the collection of the total amount due, evidence was presented to support the trial court's conclusion as to its value.[5] In hindsight, the trial court's order appears to have resulted in appellee receiving an inflated amount for this marital asset. However, if the trial court had discounted the face amount of the Milligan receivable and Milligan later paid the note in full, appellant would then be the party receiving an inflated amount for this marital asset.
As is often said, hindsight is twenty-twenty. I cannot find trial court erred in failing to have hindsight. Accordingly, I dissent from the majority's decision to vacate the valuation of the Milligan receivable and to remand this issue to the trial court. Left unanswered by the majority is how re-valuation of the Milligan receivable, upon remand, will be any less speculative than the valuation already arrived at by the trial court based upon the evidence submitted at trial.
I would overrule appellant's third assignment of error.
I concur in the majority's analysis and disposition of appellant's fifth assignment of error.[6] I also concur in the majority's analysis and disposition of appellant's sixth assignment of error.
As to appellee's cross-appeal, I concur in the majority's analysis and disposition of appellee/cross-appellant's first, third, fourth and fifth assignments of error.
Remaining for consideration is appellant's second and appellee/cross-appellant's second assignment of error. I concur in the majority's decision to reverse the trial court's child support order and remand that issue for further proceedings. I clarify my reasons for doing so.
I begin by noting the old adage, "Be careful what you wish for, you may get it." Upon remand, one of the parties may regret they did not heed this adage.
I agree with the majority the trial court should have imputed as income to appellee, the interest and/or dividends appellee will generate from the $1,860,324 cash distributive award. Such income affects the parties' combined annual income which forms the basis for the child support order, and effects the percentage of each party's income to that total.
The majority also faults the trial court for using an incorrect amount for appellant's income, noting the trial court should have imputed income to appellant as well as to appellee. I agree. However, I note the trial court indirectly attempted to do just that as reflected in its Findings of Fact Nos. 31 and 35. The worksheet specifically allows the trial court to average annual gross income from employment over a reasonable period of years. (See, Line 1A of the worksheet). This is what the trial court appears to have intended to do in Findings of Fact Nos. 31 and 35. This "income averaging" is what I believe the majority is referring to when it discusses appellant's "imputed" income. Despite the validity of the trial court's findings of fact in this regard, the trial court failed to transfer this "imputed" or "income averaged" figure to the worksheet. As was the case with appellee's imputed income, the trial court should have used this figure in determining the parties' combined income and each party's percentage thereof. Because it failed to do so, I find the trial court's determination flawed and agree the child support order must be reversed and remanded for redetermination.
The inclusion of the parties' imputed income will serve only to increase the combined annual income that forms the basis for the child support order per the worksheet. It is likely each parties' percentage to that combined income will change. R.C.3113.215(B)(2)(b) provides if the parties' combined gross annual income is greater than $150,000 per year, the court shall determine the amount of the obligor's child support obligation on a case by case basis and shall consider the needs and the standard of living of the children. The statute further directs the trial court to determine the basic child support by using the same percentage for basic child support as if the parties' combined gross income was $150,000 (here, approximately 14.65%), unless it determines such amount would be unjust or inappropriate, and would not be in the best interest of the child, obligor, or obligee. The trial court has already done so in Findings of Fact Nos. 33 and 35.
I take issue with the majority's conclusion the trial court's finding appellant's ability to continue to provide the children with a luxurious lifestyle, which thereby creates a strong ability to manipulate the children's relationship with appellee (Findings of Fact No. 35) indicates, "the trial court's focus strayed from its polestar, the best interest of the children." (Majority Opinion at 18). To the contrary, I believe such finding is demonstrative of an attempt to do what is in the best interest of the children. Although I believe this finding is considerably less significant than the trial court's other findings regarding the children's needs and standard of living, I do not find such consideration to constitute an abuse of discretion.
To conclude, I concur with the majority the trial court's worksheet calculation is sufficiently flawed to warrant reversal and remand. I would caution both parties that upon remand, the amount of child support ultimately awarded may be greater than that which appellant is obligated to pay under the order being appealed or may be less than that which appellee is entitled to receive under the order being appealed.
 ---------------------------- JUDGE WILLIAM B. HOFFMAN
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion. Costs to be split between appellant and appellee.
--------------------
--------------------
 -------------------- JUDGES
[1] The majority addresses both assignments of error under section III in the Majority Opinion.
[2] Actually, the trial court did not rule directly on appellant's motion for relief, but rather on appellee's Motion to Dismiss appellant's motion. It did so without a hearing. See, Judgment Entry filed January 6, 1998.
[3] The majority states, "appellant brought his motion pursuant to Civ. R. 60(B)(1)." (Majority Opinion at 20). A review of the record reveals Defendant's (Appellant's) Motion for Partial Relief from Judgment filed in the trial court on December 10, 1997, clearly requests relief under Civ. R. 60(B)(1), (2), (4) and (5).
[4] In the absence of a finding as to financial misconduct on the part of appellant, any loss due to the voluntary subordination of the Milligan receivable to the bank's secured interest would still be a marital loss to be equally assessed.
[5] The Majority Opinion recites some of the evidence in support the trial court's finding. (Majority Opinion at 19).
[6] The majority addresses this assignment of error under IV of the Majority Opinion and mistakenly refers to it as appellant's fourth assignment of error.